**Roberto L. CUEVAS, Individually and as Next Friend of Linda Cuevas, a Minor, Appellants,**

v.

**Ruben M. GARCIA, Francisca A. Garcia, and Sessions Mortgage Company, Appellees.**

No. 04–83–00088–CV.

Court of Appeals of Texas, San Antonio.

April 11, 1984.

Baldemar Gutierrez, Alice, for appellants.

Shirley A. Selz, Gary Norton, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellees.

Before BUTTS, TIJERINA and DIAL, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a summary judgment. Plaintiffs are the children of Federico Cuevas and Maria Guadalupe Cuevas, deceased. Maria Guadalupe died intestate on December 17, 1980. The principal asset of her estate was the community property homestead. Subsequent to her death, Federico remarried and sold this homestead in Alice and purchased a residence in Corpus Christi. The children sued the purchasers of the homestead and the mortgage company in Alice for their share of the proceeds from the sale. The trial court granted a summary judgment that plaintiffs take nothing and they appeal. We affirm.

After Maria Guadalupe died, Federico had a survivor's homestead pursuant to TEX. CONST. art. XVI, § 52 with the continuing right to live in the homestead for the remainder of his lifetime, and he was vested in fee simple with an undivided one-half of the community property. The children had legal title to the other undivided one-half. TEX.PROB.CODE ANN. § 45

(Vernon 1980).[1] Provided Federico continued to occupy the homestead, the children could not demand its partition during their father's lifetime. *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35, 37 (1929). However, once Federico sold his old homestead to purchase a new one, the old homestead was abandoned as a matter of law. *Norman v. First Bank & Trust, Bryan,* 557 S.W.2d 797, 801 (Tex.Civ.App. —Houston [1st Dist.] 1977, writ ref'd n.r. e.).

█ Defendants moved for summary judgment alleging that Federico as community administrator conveyed good title to the community property. Plaintiffs' motion in opposition contains the affidavit of Federico:

\* \* \* \* \* \*

My wife, Maria Guadalupe Cuevas died December 17, 1980 without leaving a Last Will and Testament. Then on October 6, 1981, I married Viola G. Cuevas. *Shortly after I married Viola Cuevas I abandoned the house in Alice and moved to Corpus Christi to live with my new wife, Viola G. Cuevas. All of the community debts were paid by my son, Robert Cuevas for [sic] the excep-tion of $700.00 that I paid out of my own pocket for some funeral expenses very shortly after the funeral of my late wife, Maria Guadalupe Cuevas.* I believe these monies were paid back in December of 1980 or January of 1981. *After living in Corpus Christi for a few months my new wife, Viola G. Cue-*

*vas suggested that we sell my house in Alice, Texas so that we could buy a new house in Corpus Christi.* Then thereafter, on December 21, 1981 we sold my house that was located in Alice, Texas. . . .

\* \* \* \* \* \*

I would like to state that the only purpose for selling this house was because my wife, Viola G. Cuevas wanted to buy another house in Corpus Christi, Texas and for no other reason. The papers concerning the Application to be named as Community Administrator were never completed and *I never pro-ported [sic] to act as Community Administrator* and I never received any Letters of Administration authorizing me to perform any duties of Administrator for the Estate of Maria Guadalupe Cuevas. [Emphasis ours.]

Plaintiffs raise a single point of error: defendants should not have been granted the summary judgment because a material issue of fact remains as to whether Federico acted individually or as community administrator when he conveyed the homestead to defendants.

The record is clear that after the death of Maria Guadalupe, Federico applied to court to become community administrator of her estate. Notice was posted at the courthouse of Federico's intent to become community administrator. Federico then filed an inventory, appraisement and list of claims on his wife's estate. Pursuant to § 166 [2] and § 167 [3] of the Probate Code,

---

1. Hereinafter, all statutory references will be to the TEX.PROB.CODE ANN. (Vernon 1980).

2. § 166. Order of the Court
   When such inventory, appraisement, list of claims, and bond are returned to the judge, he shall examine the same and approve or disapprove them by an order to that effect and, *when approved, the order approving them shall also authorize the survivor as community administrator to control, manage, and dispose of the community property in accordance with the provisions of this Code.* [Emphasis ours.]

3. § 167. Powers of Community Administrator
   When the order mentioned in the preceding section has been entered, the survivor, without any further action in the court, shall have the power to control, manage, and dispose of

the community property, as provided in this Code, as fully and completely as if he or she were the sole owner thereof, and to sue and be sued with regard to the same; and a certified copy of the order of the court shall be evidence of the qualification and right of such survivor. After paying community debts outstanding at the death of the deceased spouse, the qualified community administrator may carry on as statutory trustee for the owners of the community estate, investing and re-investing the funds of the estate and continuing the operation of community enterprises until the termination of the trust as provided in this Code. The qualified community administrator is not entitled to mortgage community property to secure debts incurred for his individual benefit, or otherwise to appropriate the community estate for his individual benefit;

the court issued an order on November 16, 1981, approving his inventory and appraisement and also authorized Federico as community administrator "to control, manage and dispose of the community property as provided by law." That order still stands as a final judgment. No motion for new trial or appeal was taken from that order. We observe that Federico's children by means of their father's affidavit, above, may not now collaterally attack the order confirming Federico as community administrator. *Miller v. Hood*, 536 S.W.2d 278, 285 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); TEX.R.CIV.P. 329b, 356.

The record does not indicate that Federico's community administration ever terminated. § 175. *Matter of Estate of Jackson*, 613 S.W.2d 80, 82 (Tex.Civ.App.—Amarillo), *affirmed Harrison v. Parker*, 620 S.W.2d 102 (Tex.1981). Notwithstanding Federico's remarriage to Viola, he continued to be community administrator as a matter of law. § 176.

As community administrator, Federico was empowered to convey the entire homestead whether or not he signed in the capacity of community administrator. *Todd v. Shell Petroleum Corp.*, 85 S.W.2d 1049, 1050 (Tex.Civ.App.—El Paso 1935, writ ref'd); *Maxfield v. Pure Oil Co.*, 62 S.W.2d 259, 260 (Tex.Civ.App.—El Paso 1933, writ ref'd); *Advance-Rumely Thresher Co. v. Blevins*, 248 S.W. 1086, 1088 (Tex.Civ.App.—San Antonio 1923, no writ).

We further find, contrary to the children's contention, that the warranty deed is plain on its face and shows that Federico and his new wife Viola conveyed the homestead to the purchasers for $20,400. Since the deed is not ambiguous on its face, extrinsic evidence (*i.e.* Federico's affidavit that his intent was not to act as community administrator) is not admissible. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex.1981). Assuming the

mortgage company engaged in a title search, it would have found that Federico as community administrator could convey good title to the property.

The children's cause of action lies not against the purchasers of the homestead and the mortgage company, but against their father. Since Federico was still community administrator of his late wife's estate, he became statutory trustee of the children's property after the payment of the debts outstanding at the death of his deceased spouse. *Matter of Estate of Jackson, supra* at 83. Because the same rules apply here as in any trust, the heirs as beneficiaries of that trust have a cause of action against Federico for their intestate share of one-half of the proceeds from the sale of the homestead which would arise upon his act of repudiation constituting notice to the children. *Id.*

We find that as a matter of law, Federico, the community administrator of Maria Guadalupe's estate, was authorized to convey the entire homestead. Consequently, the point of error is overruled and the summary judgment is AFFIRMED.

TIJERINA, Justice, dissenting.

I respectfully dissent. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589, 592–93 (Tex.1975); TEX.R. CIV.P. 166–A. In deciding whether or not there is a disputed material fact issue precluding summary judgment, "every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in their favor." *Id.* at 593.

There is no dispute that appellants as the children of Maria Guadalupe Cuevas, deceased and intestate, acquired a vested individual one-half interest in and to the family homestead upon her death.[1] It is con-

---

but he may transfer or encumber his individual interest in the community estate.

1. Title to an estate vests in the heirs immediately upon the death of the decedent. There is never a time when title is not vested in some-

one. This rule of common law has been enacted into the TEX.PROB.CODE ANN. § 37 (Vernon 1980). *Welder v. Hitchcock*, 617 S.W.2d 294, 297 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

ceded that Federico Cuevas relinquished and waived any rights that he had to reside in the family homestead for the rest of his natural life. *See White v. Sparks,* 118 S.W.2d 649, 651 (Tex.Civ.App.—Dallas 1938, no writ). Federico and his new wife Viola executed a warranty deed in their individual capacity conveying the property in question including appellant's interest to appellee. Section 167 of the Probate Code provides in pertinent part as follows: "The qualified community administrator is not entitled to mortgage community property to secure debts incurred for his individual benefit, or *otherwise to appropriate the community estate to his individual benefit;* but he may transfer or encumber his individual interest in the community estate." TEX.PROB.CODE ANN. § 167 (Vernon 1980). (Emphasis added.)

In my view there was a material issue as to whether Federico was a qualified community administrator. The affidavit filed in answer to the motion for summary judgment indicated that he also relinquished and waived any designated capacity as community administrator. In *Beeman v. Jones,* 102 S.W.2d 490, 491–92 (Tex.Civ. App.—Dallas 1937, no writ) the court held that a person contesting the right of surviving spouse to be appointed the administrator of the estate can show by acts, verbal statements and conduct of the surviving spouse that such right had been waived, and a refusal to admit evidence to establish a waiver was held reversible error. The record further reflects a genuine dispute as to the interest conveyed by the deed. *See Dixon v. Shirley,* 558 S.W.2d 112, 115 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Shults v. Bartz,* 431 S.W.2d 416, 419 (Tex.Civ.App.—Fort Worth 1968), *sub nom,* 464 S.W.2d 947 (Tex.Civ.App.1971). This is a suit in trespass to try title and the critical material fact issues include, the intention of the parties, a determination of how much land purchasers bought, a determination of negligence if the mortgage company did title research. *Dixon v. Shirley, supra* at 115–16. Thus it would appear that appellee failed to discharge its burden to establish the absence of genuine issues of material facts and thus summary judgment was not proper. I would sustain the assignment of error and reverse and remand for trial on the merits.